

**SIGNED this 22nd day of July, 2011.**

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**
_____

## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-11507-CAG |
| | § | |
| CRESCENT RESOURCES, LLC | § | |
| | § | CHAPTER 11 |
| Debtor. | § | |
| | § | |

| | | |
|---|---|---|
| CRESCENT RESOURCES | § | |
| LITIGATION TRUST, BY AND | § | |
| DAN BENSIMON, TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ADV. NO. 11-01013-CAG |
| | § | |
| EDWARD E. BURR, | § | |
| | § | |
| Defendant | § | |
| | § | |

### MEMORANDUM OPINION REGARDING BURR'S MOTION TO DISMISS

Crescent Resources, LLC, Crescent Holdings, LLC, and their affiliated debtors and

debtors in possession (collectively "Crescent Resources," "Crescent," or "Debtors"), filed a

petition under Chapter 11 of the Bankruptcy Code on June 10, 2009. Prior to filing for bankruptcy, Crescent was a real estate development and management organization which developed, owned, leased, managed, and sold real estate since 1969. On December 20, 2010, this Court signed the Order Confirming Debtors' Revised Second Amended Joint Plan of Reorganization (Case No. 09-11507, docket no. 1534).

On February 16, 2011, the Crescent Resources Litigation Trust (the "Trust") filed an adversary complaint against Edward E. Burr (Case No. 11-01013-CAG). The complaint states that Mr. Burr was the manager and co-owner of LandMar Group LLC ("LandMar") until November 19, 2007. Mr. Burr was also an officer of Crescent. LandMar is a debtor in this Court and a subsidiary of Crescent. The complaint seeks to avoid three alleged transfers arising out of two transactions between Mr. Burr and Crescent and LandMar. The first transaction in the complaint alleges that in April 2007, LandMar Group borrowed money from Crescent so that LandMar could give Burr $1.925 million to cover Burr's personal income tax liabilities (the "April 2007 Tax Transfer"). The second transaction allegedly occurred in November 2007 and consisted of an employment separation agreement between Crescent and Mr. Burr, whereby Burr's employment was terminated and his 20% interest in LandMar was conveyed to Crescent in exchange for $4.5 million in cash plus the forgiveness of over $71 million debt owed to Crescent (the "November 2007 Transfers"). The complaint alleges three counts. Count 1 seeks to avoid the November 2007 Transfer pursuant to Sections 548 and 550 of the Bankruptcy Code. Count 2 seeks to avoid the November 2007 Transfer pursuant to state fraudulent transfer law and Sections 544 and 550 of the Bankruptcy Code. Count 3 seeks to avoid the April 2007 Tax Transfer under state fraudulent transfer law and Sections 544 and 550 of the Bankruptcy Code.

On April 14, 2011, Burr filed a Motion to Dismiss and Brief in Support (docket no. 6). The Trust filed its Response to Defendant's Motion to Dismiss on May 9, 2011 (docket no. 13). On May 19, 2011, Defendant filed a Reply in Support of Motion to Dismiss (docket no. 15).

On May 20, 2011, the Court heard oral arguments on the Motion to Dismiss. The Court has reviewed the briefs of the Trust and Burr, and has considered the arguments and evidence of counsel. Based on the foregoing, the Court finds that Burr's Motion to Dismiss should be denied in part and granted in part.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) on which this Court can enter a final judgment. This matter is referred to the Court under the District's Standing Order of Reference. Venue is proper under 28 U.S.C. §§ 1408 and 1409. The following represents the Court's findings of fact and conclusions of law made pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

## ISSUES

After the hearing, several issues were taken under advisement: (A) does the Plan of Reorganization "specifically and unequivocally" retain the causes of action alleged in the Complaint and (B) does the Complaint state facts sufficient to satisfy the heightened pleading standards required by *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), F.R.C.P. 9(b) and 12(b). The Court will discuss each issue in turn.

A.  Does the Plan of Reorganization "Specifically and Unequivocally" Retain the Causes of Action Alleged in the Complaint

In *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating)*, the Fifth Circuit discussed how, during a Chapter 11 case, a debtor, operating as a debtor-in-possession, has most of the powers of a bankruptcy trustee to pursue claims on behalf of the estate. 540 F.3d 352, 355

(5th Cir. 2008) (citing 11 U.S.C. § 1107(a)).  Once a plan is confirmed, the debtor loses its status as debtor-in-possession, and the debtor's authority to pursue claims as though it were a trustee also expires.  *Id.* (citing 11 U.S.C. § 1101(1); *Ice Cream Liquidation, Inc. v. Calip Dairies, Inc. (In re Ice Cream Liquidation, Inc.)*, 319 B.R. 324, 333 (Bankr. D.Conn. 2005); *In re Grinstead*, 75 B.R. 2, 3 (Bankr. D.Minn. 1985)).  However, Section 1123(b)(3) allows a reorganized debtor to bring a post-confirmation action if the debtor preserves its standing to bring such a claim, but only if the plan of reorganization expressly provides for the claim's "retention and enforcement by the debtor." *Id.* (quoting 11 U.S.C. § 1123(b)(3)(B)).  Once the plan is confirmed, "the ability of the [debtor] to enforce a claim once held by the estate is limited to that which has been retained in the plan." *Id.* (quoting *Paramount Plastics v. Polymerland (In re Paramount Plastics, Inc.)*, 172 B.R. 331, 333 (Bankr. W.D.Wash. 1994)).

The Fifth Circuit has held that for a debtor to preserve a claim, the plan must expressly retain the right to pursue that action, and such reservation must be "specific and unequivocal." *Id.* (internal citations omitted).  If the plan does not make an effective reservation of the claim, "the debtor has no standing to pursue such a claim that the estate owned before it was dissolved." *Id.*

In short, *United Operating* holds that in order for a debtor to have standing to bring an action post-confirmation, the plan of reorganization must contain "specific and unequivocal" language retaining that cause of action.  The question now for this Court to decide is whether Crescent's Plan of Reorganization specifically and unequivocally retained the causes of action alleged in the Complaint.

1.    The Relevant Plan Language

The most specific retention language is found in the Plan of Reorganization at section

8.5, describing the Litigation Trust Assets to be transferred to the Litigation Trust.  The sentence

in full states:

> The Litigation Trust Assets shall include, but are not limited to, those Causes of
> Action arising under Chapter 5 of the Bankruptcy Code including those actions
> which could be brought by the Debtors under §§ 544, 547, 548, 549, 550, and 551
> against any Person or Entity other than the Litigation Trust Excluded Parties.

"Litigation Trust Assets" is defined in the Plan to mean "the Litigation Trust Claims, the

Litigation Trust Funds, and any other assets acquired by the Litigation Trust after the Effective

Date or pursuant to the Plan" (docket no. 880, Section 1.78).  "Causes of Action" is defined in

the Plan to mean "any and all Claims, Avoidance Actions, and rights of the Debtors, including

claims of a Debtor against another Debtor or other affiliate" (*Id.*, Section 1.21).  As will be

discussed later, there is no mention of "Section 542" or "turnover" in the Plan of Reorganization,

the Disclosure Statement, or the Litigation Trust Agreement (the "Plan Documents").

The other Plan language cited by the Trust which the Court finds relevant is Section

1.7(d) of the Litigation Trust Agreement:

> The Litigation Trustee shall have, retain, reserve, and be entitled to assert all such
> Claims, Causes of Action, rights of setoff and other legal or equitable defenses
> which the Debtors had immediately prior to the Commencement Date fully as if
> the Chapter 11 Cases had not been commenced or the Litigation Trust Claims had
> not been transferred to the Litigation Trust in accordance with the Plan and this
> Litigation Trust Agreement…

Additionally, the Trust cites to portions of the Disclosure Statement for the proposition that the

language advised the Debtors' creditors that the Litigation Trust would be prosecuting avoidance

actions such as that asserted against Burr:

> The liquidation of the Litigation Trust Assets may be accomplished either through
> the prosecution, compromise and settlement, abandonment, or dismissal of any or
> all claims, rights, or causes of action, or otherwise … [T]he Debtors anticipate the

5

> Litigation Trustee will investigate and pursue any such Avoidance Actions …
> Any and all proceeds generated from the Litigation Trust Assets will be the
> property of the Litigation Trust.

(Case No. 09-11507, docket no. 879, p.81.)

2.     Parties' Contentions

Burr cites to **United Operating** for the proposition that the Plan must expressly retain the

right to pursue a cause of action and that reservation must be "specific and unequivocal."  540

F.3d at 355 (citations omitted).  Burr then makes the distinction between two approaches within

the Fifth Circuit for how to interpret "specific and unequivocal"; the "Categorical Approach" and

the "Specific Approach."  Burr argues for the "Specific Approach," citing to **In re MPF**

**Holdings US LLC** for the proposition that a Chapter 11 plan must set forth "absolutely who will

be sued and on what basis—or no suit will be allowed."  443 B.R. 736, 756 (Bankr. S.D.Tex.

2011).  Burr additionally cites to **TXCO Resources Inc. v. Peregrine Petroleum, LLC (In re**

**TXCO Resources Inc.)**, No. 09-05125, (Bankr. W.D.Tex. October 27, 2010), in support of the

"Specific Approach."  Burr argues that in that case, the court dismissed all claims against two

putative defendants because such defendants were not specifically listed by name in the debtors'

plan or accompanying documents, even though the plaintiff argued that prior to confirmation it

had no evidence to support a claim against the defendants.  Burr states that the issue before the

court in that case was whether creditors received sufficient notice of the potential claims and

causes of action in order to vote on the plan, where creditors were paid in full from the sale of

assets, and none of the potential litigation recoveries would be used to satisfy creditor claims.

The court in **TXCO**, in applying the Specific Approach, held that in order to preserve claims

under the "specific and unequivocal" standard applied by **United Operating**, the plaintiff was

required to list the defendants by name.

Burr argues against using the Categorical Approach, stating that the entire foundation of the Categorical Approach rests upon the Fifth Circuit's citation to and subsequent parenthetical description of *Ice Cream*.[1]  Burr argues that nowhere in *United Operating,* outside the parenthetical discussing *Ice Cream*, does the Fifth Circuit use the term "categorical reservation," or any other similar term; instead, Burr argues, the actual holding uses the words "express" and "specific and unequivocal" to describe the required standing.  *United Operating*, 540 F.3d at 355.

Burr additionally argues for this Court to adopt the reasoning of *MPF* concerning the "*see also*" signal preceding the *Ice Cream* citation.  The court in *MPF* held that

> *Ice Cream*'s holding is merely a **supporting** citation, not a **direct** citation like *Harstad* … [T]his phrase means that the holding in *Ice Cream* merely supports the Fifth Circuit's requirement that the reservation be "specific and unequivocal," not that the Fifth Circuit adopted the holding in *Ice Cream* as its own.  The Fifth Circuit could have easily directly cited to *Ice Cream*, but instead used it as a supporting citation after a case (*i.e.*, *Harstad*) that it quoted within the body of its opinion (rather than in a parenthetical to a citation)

443 B.R. at 746 (emphasis in original).  Burr argues that, because of the signal preceding the Fifth Circuit's citation to *Ice Cream*, such case merely provides support for the *United Operating* holding, and therefore the "Specific Approach," and not the "Categorical Approach," should be adopted by this Court.

As will be discussed below, one of the main focuses in *United Operating* is the concept of notice to creditors.  Burr additionally argues for the "Specific Approach," stating that only by

---

[1] The complete quote and citation from *United Operating* is:

> For a debtor to preserve a claim, "the plan must expressly retain the right to pursue such actions." *Paramount*, 172 B.R. at 333.  The reservation must be "specific and unequivocal." *Harstad*, 39 F.3d at 902; *see also Ice Cream*, 319 B.R. at 337-38 (holding that the plan's categorical reservation of "preference" claims was sufficiently specific; plan need not itemize individual transfers that may be pursued as preferential).

*United Operating*, 540 F.3d at 355.

listing putative defendants in the Plan Documents would creditors have sufficient notice of the contents of the Plan and the creditors' treatment thereunder.  Burr argues that a categorical reservation of causes of action such as that contained in the Plan Documents does not provide unsecured creditors any additional knowledge or insight into their potential recovery, and in such a scenario, unsecured creditors are essentially voting blind.  Burr also argues that this sort of notice is important because a creditor must know whether the debtor believes the creditor to be potentially liable for future claims in order to make an informed vote on the plan.

Burr additionally argues that without this notice, he was prejudiced because the plan failed to provide him with sufficient notice to file a proof of claim or indemnification.  Burr argues that because of Burr's employment and involvement with Crescent, LandMar, and LandMar Management, LLC, Burr is entitled to indemnification for any acts or omissions arising out of, or related, to his employment and his status as a member and manager of the respective companies.

Burr makes a policy argument for the Specific Approach as well, arguing that the approach "furthers the policy of complete disclosure, which is the cornerstone of the Bankruptcy Code, and promotes the finality of confirmation orders which thereby increases certainty, discourages multiple litigation, and conserves judicial resources."  *The Official Comm. Of Unsecured Creditors of Crowley, Milner and Co. v. Callahan (In re Crowley, Milner and Co.)*, 299 B.R. 830, 852 (Bankr. E.D.Mich. 2003) (discussing why the court chose to require the Specific Approach, as opposed to the Categorical Approach, and finding that a plan of reorganization containing specific Code sections to be insufficient).

Burr argues that the Plan does not "expressly" retain any causes of action against Mr. Burr, nor does the Plan make "specific and unequivocal" reservations as to any particular causes

of action against Mr. Burr.  Burr points out that Mr. Burr is not referenced anywhere in the Plan, Disclosure Statement, or Confirmation Order.  Burr also states that the allegedly fraudulent transfers to Burr are not referenced in the Schedules or Statement of Financial Affairs of either Crescent Resources or LandMar.

Burr then argues that, if the Court determines the Categorical Approach is correct, the Trust lacks standing to pursue any claim to recover on the allegedly forgiven debt.  Burr argues that if this Court ultimately determines that the debt release is an avoidable transfer, the Trust would lack standing to pursue an action under Section 542.  Therefore, Burr argues, since the underlying claim to recover on the debt under section 542 is not actionable, any claim seeking to avoid the alleged forgiveness of such debt is moot.

The Trust argues that the Court should adhere to the Categorical Approach, arguing that with one exception, courts of the Fifth Circuit have followed *United Operating* and *Texas Gen. Petroleum* and held that (a) a Chapter 11 plan and/or disclosure statement need only state that the debtor or litigation trustee will be pursuing avoidance actions post-confirmation; and (b) identifying the defendant by name is not required.[2]  The Trust argues that the one outlier case, *MPF*, was incorrectly decided.  The Trust argues that in order to come to its conclusion, the court in *MPF* used a "strained Blue Book-based analysis" to reach its conclusion regarding the importance of *Ice Cream*.  The Trust argues that the court in *MPF* misconstrues other cases cited by *United Operating* and would lead to a rule protecting potential defendants, not creditors entitled to vote on the plan.

The Trust argues that creditors were given sufficient notice that claims such as the claim against Burr would be pursued post-confirmation.  Finally, the Trust argues that following *MPF* would render large cases such as Crescent impossible to administer.

_____

[2] All the cases cited by the Trust will be discussed below.

There is no dispute that Burr is not specifically mentioned in the Plan Documents, nor is Section 542 or "turnover" mentioned in the Plan documents.  The issue then is whether the Court finds the language in the Plan to sufficiently retain the causes of action alleged against Burr.

    3.    Review of Case Law

Since United Operating was decided, there have been several cases attempting to interpret what the Fifth Circuit meant by "specific and unequivocal."  Although there has been no binding case to define definitively what the court meant by that phrase, other courts have attempted to determine if a reorganized debtor retained standing on a case-by-case basis.  In order to make a determination if the Plan language in this case is sufficiently "specific and unequivocal," this Court finds it useful to go through the cases interpreting this phrase.

In McFarland v. Leyh (In re Texas Gen. Petroleum Corp.), the Fifth Circuit was tasked with determining if a post-confirmation debtor retained the right to pursue an avoidance action. 52 F.3d 1330 (5th Cir. 1995).  The plan language the court looked at stated that "[t]he reorganized debtor shall retain that property described on Exhibit F.  Among the property of the estate hereby distributed to the trust are those claims and causes of action listed or described on Exhibit B (including causes of action created or sanctioned by §§ 542-553)."  *Id.* at 1336.  The Fifth Circuit agreed with the bankruptcy and district courts, and found the parenthetical language to be ambiguous when read in conjunction with other sections of the plan and employed parol evidence to determine the intent of the parties.  *Id.*  The court looked at the general policy behind the assertion of avoidance actions—"the proceeds recovered in avoidance actions should not benefit the reorganized debtor; rather, the proceeds should benefit the unsecured creditors"—and determined that the debtor had standing to pursue an avoidance action.  *Id.* (citing to 5 COLLIER ON BANKRUPTCY 1123.02, at 1123-23 (Lawrence P. King ed., 15th ed. 1994)).

This Court has already discussed **United Operating**, but it is useful to look at the specific plan language the Fifth Circuit found was sufficient as well as the language the court found was not specific and unequivocal.  The court was making the determination whether the reorganized debtor retained standing to pursue certain common law claims.  **United Operating**, 540 F.3d at 354.  The court's only mention of specific language from the debtor's plan of reorganization is in the court's holding that the plan did not retain the cause of action for the common law claims:

> Neither the Plan's blanket reservation of "any and all claims" arising under the Code, nor its specific reservation under various Code provisions are sufficient to preserve the common-law claims Dynasty now brings for, *inter alia*, fraud, breach of fiduciary duty, and negligence.

**Id.** at 356.  The Fifth Circuit merely held in this case that a blanket reservation of claims *under the Code* and specific reservations of *Code provisions* was not a specific and unequivocal reservation of a *common-law* claim.  **Id.**

This makes sense, particularly given the reasoning the Fifth Circuit used in concluding that in order to retain causes of action, the reservation must be specific and unequivocal.  **Id.** at 355.   The court looked to one of the purposes of bankruptcy, namely that bankruptcy is "designed primarily to 'secure prompt, effective administration and settlement of all debtor's assets and liabilities within a limited time.'"  **Id.** (quoting **In re Kroh Bros. Dev. Co.**, 100 B.R. 487, 495 (Bankr. W.D.Mo. 1989)).  In order to facilitate a "timely, comprehensive resolution of an estate, a debtor must put its creditors on notice of any claim it wishes to pursue after confirmation."  **Id.** (citing **Harstad v. First American Bank**, 39 F.3d 898, 903 (8th Cir. 1994)).  Only with proper notice can a creditor determine whether a proposed plan effectively resolves matters satisfactorily before they vote to approve the plan.  **Id.**  The whole point of requiring "specific and unequivocal" retention language is so that a creditor, after voting on a plan, is not

suddenly blind-sided by litigation or surprised if the reorganized debtor attempts to pursue a claim which would only benefit the reorganized debtor, not creditors. *See id.* at 355-56.

In sum, *United Operating* stands for the rule that a blanket reservation is insufficient to retain a cause of action, and that the purpose of requiring "specific and unequivocal" retention language is so that creditors are on notice of what causes of action the reorganized debtor is planning on pursuing before the creditor votes on the plan.

The next Fifth Circuit case dealing with this issue is *Nat'l Benevolent Ass'n of the Christian Church v. Weil, Gotshal & Manges, LLP (In re Nat'l Benevolent Ass'n of the Christian Church)*, 333 Fed.App'x 822 (5th Cir. 2009) (unpub.). This case did little to refine what the court meant by "specific and unequivocal," ultimately determining that the debtor did not have standing to pursue a claim based on the plan language. The case does, however, reiterate general concepts about plan interpretation, stating that the court will "interpret the Plan using traditional tools of contractual interpretations." *Id.* at 828 (quoting *Advisory Comm. Of Major Funding Corp. v. Sommers (In re Advisory Comm. Of Major Funding Corp.)*, 109 F.3d 219, 222 (5th Cir. 1997)) (internal modifications omitted). The Fifth Circuit also cited to *Brown v. Fin. Serv. Corp., Int'l* for the contractual interpretation rule that "conflicting provisions should be reconciled in order to give meaning to all parts of the contract." *Id.* (quoting *Brown v. Fin. Serv. Corp., Int'l*, 489 F.2d 144, 151 (5th Cir. 1974)).

Before turning to bankruptcy court opinions in the Fifth Circuit interpreting *United Operating*, the Court believes it will be helpful to look at the cases cited by *United Operating*. The first such case the Court will examine is *In re Paramount Plastics, Inc.*, 172 B.R. 331. The Fifth Circuit relied on this case for the proposition that there was no standing to pursue

preference actions where preference actions were not preserved in the plan. *United Operating*, 540 F.3d at 356 (citing *Paramount*, 172 B.R. at 335). The court in *Paramount* stated that

> the plan contains no reference to preference actions, either in the description of creditor treatment, the means for implementing the plan, the liquidating analysis, or the retention of jurisdiction. The most specific language in the jurisdictional paragraph relates to "allowance or disallowance of claims and interests," which the Court concludes does not encompass avoidance actions.

*Paramount*, 172 B.R. at 335. The Fifth Circuit in *United Operating* relied on a case which held that a generic blanket reservation ("allowance or disallowance of claims and interests") was insufficient to preserve a claim post confirmation.

The next case requiring an in-depth discussion is *In re Ice Cream Liquidation*, 319 B.R. 324. As previously discussed, the Fifth Circuit cited *Ice Cream* for the proposition that there was "no standing to pursue turnover actions because the plan 'made no mention' of them." *United Operating*, 540 F.3d at 356 (quoting *Ice Cream*, 319 B.R. at 333). This case is useful in setting guideposts for interpreting "specific and unequivocal" because this case held that the reorganized debtor did retain standing to prosecute some claims, while also holding that the debtor did not retain standing to prosecute others. *Ice Cream*, 319 B.R. 324.

The court quoted relevant parts of section 5.2 of the plan:

The Plan confers certain "powers and duties" on the post confirmation Debtor, including:

> (a) to liquidate all of its property to cash; . . .

> (c) to prosecute any claims under Sections 544, 547, 548 and 550 [collectively, Avoidance Actions"] of the [Bankruptcy] Code; [and] . . .

> (f) other powers and duties described in th[e] Plan or conferred upon it by operation of law.

*Id.* at 327-28. The court also quoted section 8.1 of the plan, which authorized the debtor to "'compromise or settle' any 'Chapter 5 litigation.'" *Id.* at 328. The court additionally looked to

a portion of the debtor's disclosure statement which said "The Debtor shall prosecute all preference and other actions to recover funds for the estate under Chapter 5 of the Bankruptcy Code…" *Id.*  The court then held that "[t]he Plan makes no mention of Bankruptcy Code § 542, turnover actions, actions to recover accounts receivable or the invalidation of set-offs, although Plan § 5.2 specifically mentions Sections 544, 547, 548 and 550" and found that the debtor lacked standing to bring the Section 542(b) claims.  *Id.* at 333-34.

In a footnote, the court discussed the debtor's argument that the reference in section 8.1 of the debtor's power to settle or compromise "Chapter 5 litigation" was an "other power[] or dut[y] described in th[e] Plan" within the purview of section 5.2(f) of the plan.  *Id.* at 333, n.14.  The court determined that section 8.1 was ambiguous as to whether section 8.1 referred to actions such as 542(b), because the phrase "Chapter 5 litigation" was not defined in the plan and "could be interpreted merely as a reference to the materially incomplete list of chapter 5 causes of action (*i.e.,* the Avoidance Actions) contained in Plan § 5.2."  *Id.* at 333-34, n.14.  The court then determined that the disclosure statement language quoted above did not resolve the plan ambiguity either because "the Avoidance Actions do include 'preference actions' *and* other chapter 5 actions (*e.g.,* fraudulent transfer actions under Section 548) even if the Avoidance Actions do not include Section 542(b) actions."  *Id.* at 334, n.14.

The *Ice Cream* court did find that the debtor retained standing to pursue its preference claims.  *Id.* at 337.  The plan language the court considered specifically authorized the debtor to prosecute claims under Sections 547 and 550.  *Id.*  The court rejected the argument that a reference in the plan to specific code sections was not sufficiently specific, stating that this "gave notice of the Debtor's intention to commence postconfirmation preference actions" and further holding that "[t]he court adopts as the better-reasoned view those cases which hold that a Section

1123(b)(3) reservation need not be as specific as the Defendants argue in order to be enforceable." *Id.* (citing *The Elk Horn Coal Co., LLC v. Conveyor Mfg. & Supply, Inc. (In re Pen Holdings, Inc.)*, 316 B.R. 495, 504-05 (Bankr. M.D.Tenn. 2004) ("It is not practicable, especially in larger cases, for the debtor to identify by name in the plan or disclosure statement every entity that may have received a preferential payment … Nothing in [Bankruptcy Code] § 1123(b)(3) suggests such specificity is required.")). In a footnote, the court cautions against a more stringent rule—that debtors must list all known causes of action—stating that "the issue of what the debtor and/or its professionals knew and when it/they knew it potentially could be raised defensively in every postconfirmation preference action when the defendant was not specifically named in the plan." *Id.* at 337, n.21.

At its core, *Ice Cream* stands for the proposition that listing causes of action by code section is "specific and unequivocal," but that granting the reorganized debtor authority "to prosecute any claims under Sections 544, 547, 548 and 550 of the [Bankruptcy] Code; [and] . . . other powers and duties described in th[e] Plan or conferred upon it by operation of law" in conjunction with the authority to "compromise or settle" any "Chapter 5 litigation" is not "specific and unequivocal." *See Id.* As will be discussed more below, this language is different than the language at issue in the present case. The language at issue before the Court grants the Trust the authority to pursue "Causes of Action arising under Chapter 5 of the Bankruptcy Code including those actions which could be brought by the Debtors under §§ 544, 547, 548, 549, 550, and 551" (docket no. 880, Section 8.5).

The Court now moves to discussing other bankruptcy court cases construing the holding of *United Operating*. The first case is *Moglia v. Keith (In re Manchester, Inc.)*, 2009 WL 2243592 (Bankr. N.D.Tex., July 16, 2009). In *Manchester*, the plan of reorganization

established a litigation trust similar to the Trust established in the present case. *Id.* The plan of reorganization transferred to the litigation trust "Causes of Action," which was a defined term in the plan and included "any and all claims, rights, defenses, third-party claims, [etc.]" and "Avoidance Actions," another defined term. *Id.* at *4. "Avoidance Actions" in turn were defined to mean "any and all Causes of Action which a trustee, the Debtors, the Estates or other appropriate party in interest may assert under sections 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 and 724(a) of the Bankruptcy Code." *Id.* at *5. The litigation trust in the case was pursuing both avoidance actions under Sections 547, 548, 550, 502(d), and 510(c) of the Code and non-avoidance state and common law claims, including breach of fiduciary duty, payment of illegal dividends, and negligent misrepresentation. *Id.* at *1. The defendants in the case argued that the litigation trust lacked standing because the plan did not contain "specific and unequivocal retention language." *Id.* at *2.

The court in *Manchester* determined that, based on *United Operating* and the Fifth Circuit's reliance on *Ice Cream*, the plan language was sufficient to retain the avoidance causes of action, stating "creditors must be told in the plan of reorganization that avoidance actions will be pursued post-confirmation by the representative of the estate, the individual prospective defendants do not have to be identified in the plan." *Id.* at *5. The court then determined that the plan language did not specifically and unequivocally retain the non-avoidance state and common law claims, holding that:

> While the Plan's definition of Causes of Action is certainly broad enough to include them as claims the Debtors intended to preserve and transfer to the Litigation Trust, the Plan does not expressly identify these claims; nor does the Plan specifically and unequivocally transfer them to the Litigation Trust for pursuit by the Litigation Trustee post-confirmation.

*Id.* So this case stands for the proposition that listing causes of action by code section is sufficient to retain those causes of action, but transferring "any and all actions, claims, [etc.]" is

insufficient to retain a common or state law cause of action if that specific cause of action (i.e. breach of fiduciary duty) is not specifically mentioned.[3]

The next case is ***Spicer v. Laguna Madre Oil & Gas, LLC (In re Texas Wyoming Drilling, Inc.)***, 422 B.R. 612 (Bankr. N.D.Tex. 2010). That case involved two different debtors—TWD and Ranzino-Renda—and two different plans. ***Id.*** At the outset of determining whether the debtors' plans contained specific and unequivocal retention language, the court stated that:

> It does not seem to the court consistent with the objectives of the appellate courts to apply the applicable precedents in so draconian a fashion as to disserve the interests of creditors and frustrate pursuit of claims which may have merit. The court thus approaches the issues presented to it assuming that it was not the intention of the courts deciding the cases cited by the TWD Defendants and the Cook Defendants that their opinions would be too readily usably by defendants to defeat the legitimate expectations of a debtor's creditors for recovery.

***Id.*** at 624. The court went on to discuss ***United Operating*** in more detail, concluding that ***United Operating*** "stands for the proposition that creditors must be able to view a proposed plan and properly evaluate the creditors' benefits and potential liabilities so that they may then consider that information when they vote to approve or disapprove a plan." ***Id.*** at 625.

The court determined that "nowhere does ***United Operating*** state that the specific and unequivocal language must include identification of specific claims against specific defendants" before concluding that the Fifth Circuit's favorable citation to ***Ice Cream*** shows that a categorical reservation is sufficient to preserve standing for such claims. ***Id.*** at 626-27. The court ultimately concluded that:

---

[3] It is also worth mentioning that, in making the determination that the debtor lacked the standing to pursue these common and state law claims, the court entered a lengthy footnote examining the holding in ***United Operating***, stating that the plan language gave creditors sufficient notice to be able to vote on the plan and the court's belief that ***United Operating*** ultimately led to a result which "unnecessarily prejudices the Debtors' creditors and provides a needless windfall to the Defendants." ***Id.***, n.6.

The purpose of the specific and unequivocal language requirement is not to put potential defendants (at least those not voting on the plan) on notice of lawsuits that may be brought against them; rather it is to put creditors that are entitled to vote on notice that there may be assets in the form of potential lawsuits so that they may pass on the plan with sufficient knowledge of the assets that are available to pay the claims held by the creditors against the debtor.

*Id.* at 627 (citing ***United Operating***, 540 F.3d at 355). The court then established a test based on ***United Operating***, determining that the question of whether a reorganized debtor preserved standing "turns on whether the language in the [p]lan was sufficient to put creditors on notice that [the debtor] anticipated pursuing the [c]laims after confirmation." *Id.* at 627-28.

The relevant plan language from the TWD plan defined "Estate Actions" as:

any and all claims, causes of action and enforceable rights of the Debtor against third parties, or assertable by the Debtor on behalf of creditors, its estate, or itself … for recover or avoidance of obligations, transfers of property or interests in property … and other types or kinds of property or interests in property … recoverable or avoidable pursuant to Chapter 5 or other sections of the Bankruptcy Code or any applicable law.

*Id.* at 620. Using the test discussed above, the court determined that TWD had standing because the plan provided a categorical reservation of avoidance claims and was sufficient to put creditors on notice that avoidance claims would be pursued. *Id.* at 628.

The relevant plan language from the Ranzino-Renda plan transferred "all real and personal property of the estate … including but not limited to all causes of action … and any avoidance actions …" *Id.* at 620-21. The claims Ranzino-Renda wished to pursue were for common and state law claims (*i.e.*, breach of contract, breach of duty of care, and legal malpractice). *Id.* at 620. The court determined that the plan language was a "clear example of a blanket reservation that was deemed in ***United Operating*** to be insufficient to preserve for the reorganized debtor claims that belonged to the bankruptcy estate." *Id.* at 629. The court, applying contract rules of interpretation that a contract should be construed to effect the intent of the parties, looked beyond the plan to the disclosure statement. *Id.* (citing ***United States Brass***

*Corp. v. Travelers Ins. Group, Inc.* (*In re United States Brass Corp.*), 301 F.3d 296, 307 (5th Cir. 2002); *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990); *Newby v. Enron Corp.* (*In re Enron Corp. Secs.*), 391 F.Supp.2d 541, 567-68 (S.D.Tex. 2005)).  The court looked to the disclosure statement, and determined that creditors would have read the disclosure statement and expected the reorganized debtor to pursue those claims.  *Id.* at 630.  Additionally, the court stated that if the court, upon an examination of the plan and disclosure statement, determined that the debtor was required to pursue a claim in order to perform on the plan, the court could order the debtor to pursue that claim.  *Id.* (citing 11. U.S.C. § 1142(a)).  If the court found that the debtor was under a duty to pursue such a claim, "the revesting and reservation provision on which that performance rests would be sufficient to support standing, despite any relevant want of specificity of description in the plan itself."  *Id.*

In sum, *Texas Wyoming Drilling* establishes a test, based on the importance of providing notice to creditors, to determine if plan language meets the "specific and unequivocal" requirement.  If the plan language does not, the court can look outside the plan to the disclosure statement to determine the expectation of creditors.[4]

---

[4] This case was recently upheld on appeal to the Fifth Circuit.  *Spicer v. Laguna Madre Oil & Gas, LLC* (*In re Texas Wyoming Drilling, Inc.*), No. 10-10717 (5th Cir. July 21, 2011).  The Fifth Circuit upheld the Bankruptcy Court's finding that the TWD plan contained specific and unequivocal retention language, holding that "where the plan and disclosure statement reserved the right to pursue the Avoidance Actions against pre-petition shareholders of TWD, the reorganized debtor specifically and unequivocally retained these claims under *In re United Operating*."  *Id.* at 8.  The Fifth Circuit reached this conclusion while holding that the court "need not decide whether a debtor whose plan fails to identify *any* prospective defendants has standing to pursue post-conformation [sic] claims against subsequently-named defendants."  *Id.*  Additionally, the Fifth Circuit held that a court may look at the disclosure statement to determine whether a post-confirmation debtor has standing.  *Id.* at 6.  The court found this to be consistent with the purpose of *United Operating*, "to put 'creditors on notice of any claim [the debtor] wishes to pursue after confirmation' and enable 'creditors to determine whether a proposed plan resolves matters satisfactorily before they vote to approve it.'"  *Id.* at 5 (quoting *United Operating*, 540 F.3d at 355).  The court also "observed that *In re United Operating* focused exclusively on the retention of *claims*" as opposed to specific causes of actions against specific defendants.  *Id.* at 7-9 (emphasis in original).  Therefore, while the Fifth Circuit did not specifically define "specific and unequivocal," this Court interprets the Fifth Circuit's ruling to be in line with the findings presented herein.

In ***Blue Water Endeavors, LLC v. AC & Sons, Inc. (In re Blue Water Endeavors, LLC)***, 2011 WL 52525 (Bankr. E.D.Tex. Jan. 6, 2011), the court found that the reorganized debtor lacked standing to pursue certain common law claims.  The court discussed that there must be an identifiable intent to bring such an action in order to reserve or retain that cause of action.  ***Id.*** at *6 (discussing ***United Operating***, 540 F.3d 351).  The court determined the language the debtor cited to contained only generic language (i.e. "lawsuits or other claims against third-parties") and found the reorganized debtor lacked standing.  ***Id.***

In ***In re TXCO***, the court found that certain claims against some defendants were not effectively retained in the plan of reorganization (Case No. 09-05125, docket no. 176 & 177). The court discusses the relevant plan language in the court's Order Granting the Motion to Dismiss, first discussing Section 7.13 of the plan and stating that it was a "general retention provision which purported to retain all causes of action of the debtors for the benefit of the reorganized debtor." ***Id.*** at 4.  The court then discussed Section 7.15 of a purchase and sale agreement discussed in the plan of reorganization.  The purchase and sale agreement defined "Peregrine Claims" (one of the defendants) as "certain claims or causes of action relating to certain potential breaches of one or more confidentiality agreements between one or more sellers and one or more third parties" relating to oil and gas leases in Maverick County, Texas.  ***Id.***  The court found that this language, and similar language in the plan documents, did not expressly retain standing for the plaintiff to pursue a cause of action against a defendant not specifically named.  Looking at the court's Order, the most specific retention language appeared in a purchase and sale agreement and included "certain claims or causes of action relating to certain potential breaches of one or more confidentiality agreements." ***Id.***  This appears to be more

along the lines of a blanket reservation which other courts in the Fifth Circuit have determined to be ineffective.  It appears to be in line with the other cases discussed above.

The one outlier of all the 5th Circuit bankruptcy cases is *In re MPF Holding U.S. LLC*, 443 B.R. 736 (Bankr. S.D.Tex. 2011).  In that case, the court, after discussing *Manchester* and *Texas Wyoming*, concluded that "the Fifth Circuit requires that the parties to be sued after confirmation must be individually identified in the plan, and that failure to do so necessarily means that the bright-line test [from *United Operating*] is not satisfied."  *Id.* at 744.  In other words, the plan must go further than reciting code provisions; it must state that a specific cause of action will be brought against a specific defendant.  *See id.* at 746.  This Court declines to adopt the holding of the case and believes that the other cases in the Fifth Circuit are more in line with the holding of *United Operating*.[5]

4.    Analysis

Having done an exhaustive discussion of the relevant case law on this issue, it appears that, while the Fifth Circuit has not defined what "specific and unequivocal" means, cases have interpreted different plan language on case-by-case bases which this Court can use as guideposts with which to judge the plan language at issue here.  Courts have held that listing causes of action by code section is sufficiently "specific and unequivocal."  *See Texas Wyoming Drilling*, 422 B.R. 612; *Manchester*, 2009 WL 2243592; *Ice Cream*, 319 B.R. 324.  The courts have also held that a generic blanket reservation is insufficient.  *Blue Water*, 2011 WL 52525, *6 ("lawsuits or other claims"); *Manchester*, 2009 WL 2243592, *4 ("any and all actions, claims,

---

[5] Additionally, this Court finds that following the holding in *MPF* would be overly burdensome in a case such as the present case.  This case involves 122 debtors, billions of dollars in debt, and over 5,000 creditors.  To require the specificity outlined in *MPF* would lead to an unwieldy plan of reorganization and unduly delay the plan confirmation process.

rights, [etc.]"); *Ice Cream*, 319 B.R. 324, 328 (granting the authority to "compromise or settle" any "Chapter 5 litigation").

The cases in the Fifth Circuit all cited *United Operating*.  *United Operating*, in making its holding, also discussed that one of the purposes of bankruptcy is to "secure prompt, effective administration and settlement of all debtor's assets and liabilities within a limited time."  40 F.3d at 355 (quoting *In re Kroh Bros. Dev. Co.*, 100 B.R. at 495).  In order to facilitate this resolution of the estate, "a debtor must put its creditors on notice of any claim it wishes to pursue after confirmation."  *Id.* (citing *Harstad*, 39 F.3d at 903).  It is for this reason—notice to creditors— that the Fifth Circuit determined that the retention language needed to be "specific and unequivocal."  *Id.*

This Court agrees with the reasoning behind those cases applying what has been referred to as the "Categorical Approach," and adopts the test established in *Texas Wyoming Drilling* to determine if the plan language meets the "specific and unequivocal" requirement.  422 B.R. at 627-28.  That test, again, was to make a determination "whether the language in the [p]lan was sufficient to put creditors on notice that [the debtor] anticipated pursuing the [c]laims after confirmation."  *Id*. at 627-28.  If so, the language meets the "specific and unequivocal" requirement.  With this test in mind, the Court will now determine if the Plan retained the causes of action alleged by the Trust in the Complaint and if so, does the Plan retain a cause of action for turnover.

      a.    <u>The Causes of Action in the Complaint</u>

The complaint alleges three counts.  Count 1 seeks to avoid the November 2007 Transfer pursuant to Sections 548 and 550 of the Bankruptcy Code.  Count 2 seeks to avoid the November 2007 Transfer pursuant to state fraudulent transfer law and Sections 544 and 550 of the

Bankruptcy Code.  Count 3 seeks to avoid the April 2007 Tax Transfer under state fraudulent transfer law and Sections 544 and 550 of the Bankruptcy Code.  The relevant language the Court will look at is from Section 8.5 of the Plan:

> The Litigation Trust Assets shall include, but are not limited to, those Causes of Action arising under Chapter 5 of the Bankruptcy Code including those actions which could be brought by the Debtors under §§ 544, 547, 548, 549, 550, and 551 against any Person or Entity other than the Litigation Trust Excluded Parties.

This language clearly includes Sections 544, 548 and 550, which were alleged by the Trust in the Complaint against Burr.  It is clear, based on the above test and the cases cited above, that this is sufficient to put those voting on the Plan on notice that the Trust intended to pursue those claims under Sections 544, 548, and 550.

Neither side discussed whether the language in the Plan Documents sufficiently retained the "state fraudulent transfer law" causes of action in the Complaint.  In the Plan, Causes of Action is defined to include "Avoidance Actions," which is defined in the Plan  at Section 1.12 to mean "any actions commenced, or that may be commenced before or after the Effective Date, pursuant to sections 544, 547, 548, 549, 550, or 551 of the Bankruptcy Code" (Case No. 09-11507, docket no. 880).   While this bolsters the argument that Section 544, 548, and 550 were specifically and unequivocally retained in the Plan, it does not further the argument that the state fraudulent transfer law claims were specifically and unequivocally retained.  Any other language discussing "Claims" or "Causes of Action" in the Plan Documents is only generic, blanket reservations, deemed by the Fifth Circuit to be insufficient to preserve those claims.  For this reason, the Court finds that the Trust does not have standing to bring the "state fraudulent transfer law" claims against Burr.

b.  <u>Turnover</u>

Burr argues that even if this Court determines the Trust has standing to pursue the causes of action under Sections 544, 548, and 550 (which it has), the issue is still moot because the Trust lacks standing to pursue turnover of those claims.  Looking at the Plan language, it appears this language falls somewhere between "any and all claims" and listing turnover claims by statute number.  The one case dealing with "Chapter 5 litigation" held that phrase alone to be insufficient.  *See **Ice Cream***, 319 B.R. at 328.  However, in that case, the reference to Chapter 5 was in isolation.  ***Id.***  Here, Chapter 5 is referenced as well as six specific code sections.  So the question before the Court becomes whether a reference to Chapter 5 of the Bankruptcy Code, in conjunction with Sections 544, 547, 548, 549, 550, and 551 is "specific and unequivocal" to retain a turnover cause of action under Section 542.  Based on the above discussion, this Court finds that a cause of action for turnover was specifically and unequivocally retained by this language in the Plan.

Using the test from ***Texas Wyoming***, it seems far-fetched to believe that a creditor would not be on notice that the Trust anticipated pursuing turnover claims after confirmation.  Looking at the language of the Plan, a creditor could not feign surprise that the Trust would pursue a claim under Section 542.  This is additionally bolstered by looking at the table of contents of the Bankruptcy Code.  Chapter 5 is titled "Creditors, the Debtor, and the Estate" and is further broken up into three different subchapters.  *See generally* 11 U.S.C. 101, et seq.  Subchapter III is entitled "The Estate" and includes Sections 541-562.  As discussed, the Plan specifically includes six code sections, Sections 544, 547, 548, 549, 550, and 551.  These are all from Subchapter III of Chapter 5.  While the Plan language is more generic than language considered

in other cases, this Court finds that it was sufficient to put creditors voting on the Plan on notice that 542 turnover claims may be pursued.

     5.    <u>Does the Complaint Survive the Heightened Pleading Standards</u>

Burr argues that the Complaint does not state facts sufficient to satisfy the heightened pleading standards required by ***Iqbal***, ***Twombly***, and F.R.C.P. 9(b) and12(b). Without ruling on the merits of this portion of Burr's Motion to Dismiss, the Court will grant the Plaintiff's request that it be granted leave to amend. The Federal Rules of Civil Procedure provide that leave to amend should be freely granted when justice so requires. FED. R. CIV. P. 15(a). Defendant's Motion to Dismiss lists this as an alternative request for relief, asking the Court to "require the Trust to replead such claims" (docket no. 6, p.13). Additionally, "[g]ranting leave to amend is especially appropriate … when the trial court has dismissed the complaint for failure to state a claim." ***Griggs v. Hinds Junior Coll.***, 563 F.2d 179 (5th Cir. 1977). The Court therefore finds that leave should be granted to the Plaintiff in order to replead their Complaint, consistent with this Memorandum Opinion.

CONCLUSION

Having gone through the facts of the case and considered the arguments made by the parties, this Court finds that (1) the Plan preserved the claims made in the Complaint under Sections 544, 548, and 550 and turnover claims with language which was specific and unequivocal, (2) the Plan does not preserve the claims made in the Complaint under "state fraudulent transfer law," and (3) the Court grants leave for the Plaintiff to amend the Complaint consistent with this Opinion.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss filed on April 14, 2011 (docket no. 6) is denied for the purposes of objecting to the Trust's standing to pursue claims under 544, 548, and 550 of the Bankruptcy Code.

IT IS FURTHER ORDERED that the Trust lacks standing to pursue its claims under "state fraudulent transfer law."

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss is denied without prejudice to re-urge the arguments that the Complaint should be dismissed pursuant to *Iqbal*, *Twombly*, and F.R.C.P. 9(b) and12(b).

IT IS FURTHER ORDERED that the Trust is granted leave to amend the Complaint. The Trust will have 45 days from the date of entry of this Opinion, and for good cause shown, that date may be extended.

# # #